1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11

JANE DOE,

CASE NO. 2:24-cv-00435-TL

                                    Plaintiff,

12

                    v.

ORDER ON MOTION TO PROCEED
UNDER PSEUDONYM AND FOR
PROTECTIVE ORDER

13

SALESFORCE.COM INC ET AL,

14

                                    Defendants.

15
16
17

        This matter is before the Court on Plaintiff's Motion to Proceed Under Pseudonym and

18

for Protective Order Preventing Contact with Plaintiff's Traffickers and Disclosure of Plaintiff's

19

Identity to Her Traffickers. Dkt. No. 55-1. Having reviewed Defendants' oppositions (Dkt. Nos.

20

63, 64,[1] 65, 67), Plaintiff's replies (Dkt. Nos. 70, 71), and the relevant record, and finding oral

21

argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS Plaintiff's Motion to Proceed Under

22

Pseudonym and GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Protective Order.

23
24

---

[1] Docket No. 64 is the corrected version of the original Opposition filed at Docket No. 61.

# I.   BACKGROUND

Plaintiff Jane Doe (M.K.) is a citizen and resident of King County, Washington, and a survivor of sex trafficking. Dkt. No. 1 ¶ 8. From 2015 to 2023, Plaintiff was harbored and forced to engage in commercial sex acts by her traffickers. *Id.* Defendants are businesses and individuals related to the hotels at which Plaintiff was allegedly forced to engage in commercial sex acts, as well as the online platforms on which Plaintiff was allegedly trafficked. *See, e.g.*, *id.* ¶¶ 103, 163.

On March 29, 2024, Plaintiff filed the instant action, asserting violations of the Federal Human Trafficking Statute (*id.* ¶¶ 201, 220, 235) and the Trafficking Victims Protection Reauthorization Act ("TVPRA") (*id.* ¶¶ 239, 244). She filed the instant motion on June 24, 2024. Dkt. No. 55.

# II.   DISCUSSION

Plaintiff seeks an order authorizing her to proceed under pseudonym, as well as a protective order prohibiting Defendants from contacting her sex traffickers and from disclosing her identity to them. Dkt. No. 55-1 at 2. The Court will address each of these requests in turn.

## A.   Motion to Proceed Under Pseudonym

### 1.   The Governing Standard for Anonymity

Federal Rule of Civil Procedure 10(a) instructs that the title of every complaint "include the names of all the parties." Fed. R. Civ. P. 10(a). "The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). A party's use of fictitious names "runs afoul of the public's common law right of access to judicial proceedings." *Does I through XXIII v. Advanced Textile*, 214 F.3d 1058, 1067 (9th Cir. 2000).

1    However, the Ninth Circuit allows parties to use pseudonyms under special

2  circumstances where nondisclosure of the party's identity is necessary "to protect a person from

3  harassment, injury, ridicule, or personal embarrassment." *Id.* at 1067–68 (quoting *United States*

4  *v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). Where the party's need for anonymity outweighs

5  prejudice to the opposing party and the public's interest in knowing the party's identity, a party

6  may preserve his or her anonymity in judicial proceedings. *Id.* at 1068. Applying this balancing

7  test, courts have permitted plaintiffs to use pseudonyms in three situations: (1) when

8  identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is

9  necessary to preserve privacy in a matter of sensitive and highly personal nature; and (3) when

10  the anonymous party is compelled to admit his or her intention to engage in illegal conduct. *Id.*

11    To determine the need for anonymity, courts must balance five factors: "(1) the severity

12  of the threatened harm, (2) the reasonableness of the anonymous party's fears . . . , (3) the

13  anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and

14  (5) the public interest." *Kamehameha Schs*, 596 F.3d at 1042 (quoting *Advanced Textile*, 214

15  F.3d at 1068). The first three factors address the need for anonymity. If a court finds a need for

16  anonymity, then it weighs the prejudice to the opposing party and the public interest. In cases

17  where the demonstrated need for anonymity outweighs prejudice to the opposing party and the

18  public's interest in knowing the party's identity, a court "should use its powers to manage

19  pretrial proceedings under Rule 16(b) and to issue protective orders limiting disclosure of the

20  party's name under Rule 26(c) 'to preserve the party's anonymity to the greatest extent possible

21  without prejudicing the opposing party's ability to litigate the case.'" *J.C. v. Choice Hotels Int'l,*

22  *Inc.*, No. C20-0155, 2021 WL 1146406, at *2 (N.D. Cal. Mar. 4, 2021) (quoting *Advanced*

23  *Textile*, 214 F.3d at 1068); *see* Fed. R. Civ. P. 16(b); Fed. R. Civ. P. 26(c).

24

2.      **Plaintiff's Entitlement to Anonymity**

Defendants do not oppose Plaintiff's request to proceed by pseudonym in pre-trial proceedings, but request that "if the matter proceeds to trial, Plaintiff must timely move for continued use of the pseudonym and justify such relief prior to trial." Dkt. No. 64-1 at 5; *see also* Dkt. Nos. 63, 65, 67 (joining in G6 Defendants' Response). Plaintiff does not address this request on reply. *See* Dkt. Nos. 70, 71.

Plaintiff has sufficiently established her need for anonymity. She alleges that she was trafficked for nearly ten years, and that her trafficker used "a combination of force, fraud, coercion, abuse, threats against family members, enticement, alcohol, and drugs to force her to engage in commercial sex". Dkt. No. 55-1 at 3; Dkt. No. 1 ¶ 106. She was physically abused throughout this time. Dkt. No. 1 ¶ 103. Plaintiff has also submitted a declaration stating that her traffickers threatened to harm or kill her and her family if she ever revealed what they did to her. Dkt. No. 56 ¶ 5.

The Court further finds that Plaintiff's need for anonymity outweighs both the risk of any prejudice to defendants (as they do not oppose the motion) and the public's interest in knowing Plaintiff's identity at the pre-trial stage of this case. *Advanced Textile*, 214 F.3d at 1068–69; *see also Choice Hotels Int'l*, 2021 WL 1146406, at *3. As Plaintiff does not appear to oppose the limitation—at this time—of her use of a pseudonym to pre-trial proceedings, the Court GRANTS her motion to proceed anonymously in all public filings and in all public court proceedings until the time of trial. Should this matter proceed to trial, Plaintiff must timely move for continued use of the pseudonym at that time.

**B.     Motion for Protective Order**

While the Parties agree that Plaintiff may proceed by pseudonym, they disagree regarding whether she should be granted additional protection through a Protective Order that would limit

Defendants' ability to contact her sex traffickers and from disclosing her identifying information to them. Plaintiff argues that good cause exists to limit Defendants' contact with her traffickers because such contact poses a risk of violent retaliation against Plaintiff and her family. Dkt. No. 55-1 at 2. She additionally argues that contact with her traffickers and their affiliates and disclosure of her identity is contrary to the TVPRA and public policy, and that disclosure invades her constitutional right to informational privacy. *Id.* at 3.

### 1.    Legal Standard for a Protective Order

Under Federal Rule of Civil Procedure 26(c)(1), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "Rule 26(c) 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" *Choice Hotels Int'l*, 2021 WL 1146406, at *2 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)); *see also Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) ("The law . . . gives district courts broad latitude to grant protective orders to prevent disclosure of material for many types of information."). "The moving party has the burden of showing a particular need for protection under Rule 26(c)." *Choice Hotels Int'l*, 2021 WL 1146406, at *2. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). "If a court finds that particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Id.* (citing *Gen. Motors Corp.*, 307 F.3d at 1210–11).

### 2.    Good Cause Exists for Protections for Plaintiff

Plaintiff's contention that she is at risk of violent retaliation is supported by the allegations in her complaint, which sufficiently show that the severity of the potential harm is

immense, and that her fear of harm is reasonable. Plaintiff alleges that she was trafficked for nearly ten years. Dkt. No. 55-1 at 3. Her trafficker used "a combination of force, fraud, coercion, abuse, threats against family members, enticement, alcohol, and drugs to force her to engage in commercial sex" and turn over all proceeds to her trafficker. Dkt. No. 1 ¶ 106. She was forced to engage in sex acts multiple times a day and would be beaten, or her and her family's lives would be threatened, if she did not comply. *Id.* ¶ 103. Plaintiff alleges that her traffickers kept her legal identification documents and had guns. *Id.* Plaintiff has also submitted a declaration detailing the abuse she was subject to and illustrating that her fear of harm is reasonable. *See* Dkt. No. 56. Her traffickers threatened her repeatedly throughout the time she was trafficked, including by threatening to harm or kill her if she ever revealed what they did to her. *Id.* at 2.

The severity of the threatened harm, the reasonableness of Plaintiff's fears, and her vulnerability to such harm are similar to the concerns raised by plaintiffs in other TVPRA cases where courts found good cause for additional protections. *Choice Hotels Int'l*, 2021 WL 1146406, at *4. For example, in *M.L. v. Craigslist Inc.*, the court found that "[a]lthough there are no allegations, or declarations from M.L. about recent threats by these individuals, or by associates of these individuals, . . . the allegations in the Amended Complaint are sufficient to show the severity of the potential harm is immense, and M.L.'s fear of harm if these individuals find out who she is, or where she works, or where she resides, is reasonable." No. C19-6153, 2020 WL 8639345, at *1 (W.D. Wash. Jul. 8, 2020), *modified sub nom.* 2020 WL 8639344, at *2 (W.D. Wash. Aug. 3, 2020); *see also A.C. v. Red Roof Inns, Inc.*, No. C19-4965, 2020 WL 5361731, at *1 (S.D. Ohio Sept. 8, 2020) (granting additional protections where plaintiff had been trafficked for two years and trafficker had previously gained control of her youngest child).

Accordingly, the Court FINDS that good cause exists to limit the disclosure of Plaintiff's identifying information to her traffickers and known affiliates.

### 3.     Policy and Constitutional Arguments Raised by Plaintiff

Plaintiff also argues that her fundamental right to safety and access to the courts, public policy, and her constitutional right to privacy in the disclosure of her personal information weigh in favor of a wholesale bar on Defendants' contact with her traffickers or disclosure of her identifying information to them. Dkt. No. 55-1 at 7–13. The Court has already determined that good cause exists to limit the disclosure of Plaintiff's identifying information to her traffickers and their known affiliates; however, it will also address each of these arguments raised by Plaintiff.

Plaintiff argues that "[p]ublic policy supports trafficking survivors safely pursuing their claims in court" (Dkt. No. 55-1 at 9), and cites to *Mehl v. Blanas*, 241 F.R.D. 653 (E.D. Cal. 2007), to support her argument that disclosure of her sensitive information in discovery should be limited (Dkt. No. 55-1 at 7–8). But while the Court agrees that public policy and the TVRPA's stated intent supports protections for trafficking survivors—such as the ability to proceed under a pseudonym, which the Court has already determined is appropriate here—*Mehl* does not support the type of wholesale bar on contacting witnesses that Plaintiff proposes.

*Mehl v. Blanas* addressed a discovery dispute regarding production of applications for permits to carry concealed weapons and other confidential documents that revealed (1) the home addresses, social security numbers, and other sensitive information of former judges, district attorneys, and police officers; (2) information that would identify "times and places the applicants would be vulnerable to attack"; and (3) information that could be used for identity theft. 241 F.R.D. at 655. The *Mehl* defendants argued that redaction of such information was necessary for the safety of those persons and was consistent with a California state law exempting such information from public disclosure, while plaintiffs argued that they needed such information in order to locate and depose possible witnesses. *Id.* at 656–57. In holding that each

of the categories of disputed information was entitled to protection, the court found that

defendants had identified specific harm to non-litigants, holding that defendants were permitted

to redact the sensitive information but providing plaintiffs with a procedure for disclosure of the

information for good cause. *Id.* at 658. But the protections that *Mehl* provided for the at-issue

sensitive information are far less burdensome on plaintiffs than Plaintiff here would place on

Defendants. Plaintiff seeks to bar Defendants entirely from contacting specific witnesses—not a

question that the *Mehl* court considered. Further, it's notable that in *Mehl*, the court addressed the

question of privacy protections for the information of *non-litigants*, whereas in this case, Plaintiff

seeks protections for *her own* information. *See id.* at 659; *see also* Dkt. No. 55-1 at 8; *Moore v.*

*Battelle Energy Alliance, LLC*, No. C21-0230, 2023 WL 1767391 (D. Idaho Feb. 3, 2023)

(noting that protection of nonparties is particularly important because nonparty's conduct is not

at issue in the case and listing cases in support). While the Court certainly agrees with Plaintiff

that good cause exists for protections for her information, *Mehl* simply does not support the

specific protections Plaintiff seeks here.

Plaintiff also argues that her constitutional right to privacy in the disclosure of her

personal information supports the protections she seeks here. Dkt. No. 55-1 at 10. The Supreme

Court has identified the "somewhat elusive interest in 'avoiding disclosure of personal matters'

as a privacy interest protected by the Constitution." *Doe v. Garland*, 17 F.4th 941, 946 (9th Cir.

2021) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). Here, Plaintiff argues that "sex

trafficking survivors such as M.K. have a constitutional right to privacy from disclosure of

information that would result in a legitimate safety concern." Dkt. No. 55-1 at 13.

Plaintiff primarily relies on *Varo v. Los Angeles Cnty. Dist. Att'ys Off.*, 473 F. Supp. 3d

1066 (C.D. Cal. 2019), to support her argument that contact with her traffickers or disclosure of

her identifying information to them would violate her constitutional right to informational

privacy. Dkt. No. 55-1 at 10–13. But *Varo*, again, does not address the disclosure of a *plaintiff's* identifying information, nor does it discuss the question of a prohibition on a defendant's contact with certain witnesses. *See* 473 F. Supp. 3d at 1072. The court in *Varo* found that the government's disclosure of the names and addresses of individual *witnesses* who had been subpoenaed to testify in a case to a violent criminal offender *during the course of the criminal prosecution* plausibly constituted the "the existence of a constitutional right to informational privacy that cover[ed] the narrow circumstances at issue," such that plaintiff's section 1983 claim survived at the motion to dismiss stage. *Id.* at 1075. In determining whether a constitutional privacy right existed, the court looked to a number of factors, including the type of information requested, the potential for harm in subsequent nonconsensual disclosures, the injury from disclosure, the adequacy of safeguards for the information, the need for access, and whether an express statutory mandate or articulated public policy weighed towards access. *See id.* at 1074 (quoting *In re Crawford*, 194 F.2d 954, 959 (9th Cir. 1999)). But *Varo* in no way addresses the situation here, where Plaintiff chose to bring a lawsuit (and is therefore a party versus a non-party witness) and seeks to prevent the disclosure of the prosecuting party's information in discovery. Again, while the Court has determined that Plaintiff has good cause for protections for her information, such as the ability to proceed under a pseudonym, *Varo* and her argument regarding her constitutional right to informational privacy do not support the specific protections she seeks.

### 4.     Due Process Concerns Weigh Against a Wholesale Bar on Defendants' Contact with Plaintiff's Traffickers

Defendants generally do not appear to dispute that Plaintiff has a significant need for anonymity and additional protections but argue that the restrictions proposed by Plaintiff—which include contacting her traffickers and revealing Plaintiff's identifying information to them—

unduly infringe on their due process rights "to prepare their defense by barring access to evidence that is likely directly relevant to Plaintiff's claims and allegations." Dkt. No. 64-1 at 2; *see also* Dkt. No. 63 at 3–4. Plaintiff argues that no probative value exists in contacting her traffickers because "they have no reason to admit their criminal activity and will either lie or plead the Fifth Amendment." Dkt. No. 55-1 at 13, 15.

While cases cited by both Parties support a protective order placing certain restrictions on Defendants' disclosure of Plaintiff's identity to her traffickers, the Parties have not pointed to—and the Court has not been able to find—any cases that extend protections so far as to prevent defendants from contacting witnesses entirely. The Court declines to adopt such extreme protections here. While Plaintiff argues that contacting her traffickers holds no probative value, Defendants' due process rights afford them "an opportunity to present every available defense," and Defendants are entitled to investigate the facts underlying Plaintiff's allegations free from interference. *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1303 (2010) (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)); *see also Red Roof Inns*, 2020 WL 5361731, at *5. The Court agrees.

Accordingly, the Court must provide Defendants with the ability to contact witnesses that they believe to be potentially material with certain protections discussed in the next section.

### 5.    Additional Protections for Plaintiff

Plaintiff's legitimate safety concerns support the imposition of restrictions on Defendants' contact with her traffickers and on Defendants' ability to disclose Plaintiff's identity to them. Other courts have "prevented the disclosure of plaintiff's true identity to the known traffickers or traffickers' known affiliates unless particular procedures are followed" where plaintiffs have shown good cause for additional protections. *Choice Hotels Int'l*, 2021 WL 1146406, at *5 (cleaned up) (quoting *Red Roof Inns*, 2020 WL 5361731, at *4). "Courts have

generally adopted one of two procedures: (i) requiring the parties to meet and confer and, if a stipulated motion cannot be submitted, filing a motion seeking an order from the court in which a defendant explains the necessity of the disclosure; or (ii) requiring a defendant to send a letter to the court *ex parte* and *in camera* describing the information sought and explaining the necessity of the disclosure." *Id.*

Plaintiff requests the first procedure, and suggests the following language to be used in the Protective Order:

> Only Plaintiff's identifying name(s) may be disclosed to Plaintiff's alleged trafficker(s), and his or her counsel, and only to the extent it is necessary, and that Plaintiff's Identity will assist the alleged trafficker(s) in recalling, relating, or explaining facts or in testifying. Prior to a Party's contact with Plaintiff's alleged trafficker(s), the Parties must first meet and confer. The Party seeking contact must provide a written explanation for the need to contact the trafficker and/or affiliate and set forth the alternative efforts taken to obtain the information. The Party seeking contact must provide a written explanation of measures that will be taken to protect Plaintiff from Plaintiff's alleged trafficker(s) after disclosure. If no agreement regarding the contact is reached, the Party pursuing contact may file a motion seeking an order from the Court in which it will explain the necessity of the disclosure. No disclosure may be made before Plaintiff gives consent or the Court issues an order specifically allowing such disclosure.

Dkt. No. 55-1 at 16–17.

Defendants request the procedure adopted in *Choice Hotels Int'l*, which used the following language:

> At least fourteen days prior to contacting Plaintiff's alleged trafficker(s) or their known associates, Defendant shall submit an *ex parte* letter to the court of its intent to contact Plaintiff's alleged trafficker(s) and to reveal Plaintiff's identity to the alleged trafficker(s). Defendant shall describe the information sought, describe why that information is sought from the alleged trafficker(s) as opposed to some other source, and explain the necessity of disclosing Plaintiff's identity. The court will evaluate the request to ensure that the information sought is relevant to the

elements of a claim or defense and proportional to the needs of this case.

*Choice Hotels Int'l*, 2021 WL 1146406, at *5; Dkt. No. 64-1 at 13–14.

The Court finds that a combination approach is most appropriate in this case, in order to both provide Plaintiff with notice of Defendants' intent to contact her traffickers so that she may take appropriate safety measures as well as to protect Defendants' confidential work product. The Court notes that in *Choice Hotels Int'l*, the court declined to include a provision requiring defendants to provide advance notice to plaintiff before contacting her trafficker. However, in that case, plaintiff's trafficker was in jail, whereas in this case, Plaintiff's trafficker does not appear to be currently incarcerated. Thus, the Court finds that a provision requiring advance notice of contact with Plaintiff's traffickers is appropriate under the circumstances here.

The Court notes that the Parties' proposed protective orders are substantially similar. The Parties shall remove the language in Plaintiff's proposed Protective Order in Section IV.C.5 excepting and excluding Plaintiff's traffickers and their associates from the list of individuals to whom Plaintiff's Identity may be disclosed, and shall add the following language to the Protective Order:

> Only Plaintiff's identifying name(s) and/or photographs may be disclosed to Plaintiff's alleged trafficker(s), and his or her counsel, and only to the extent it is necessary, *i.e.*, that Plaintiff's Identity will assist the alleged trafficker(s) in recalling, relating, or explaining facts or in testifying.
>
> Defendants shall submit an *ex parte* letter to the court of its intent to contact Plaintiff's alleged trafficker(s) and to reveal Plaintiff's identity to the alleged trafficker(s), as well as provide Plaintiff with notice that it has done so. In their *ex parte* submission to the Court, Defendants shall describe the information sought, describe why that information is sought from the alleged trafficker(s) as opposed to some other source, and explain the necessity of disclosing Plaintiff's identity. Defendants shall provide a written explanation of measures that will be taken to protect Plaintiff from Plaintiff's alleged trafficker(s) after disclosure. The court will evaluate the

request to ensure that the information sought is relevant to the elements of a claim or defense and proportional to the needs of this case.

Should the Court grant Defendants' request, Defendants shall provide Plaintiff with at least fourteen (14) days advance notice of the contact, the identity of the alleged trafficker(s) who will be contacted, and the information that will be disclosed regarding Plaintiff.

### III.   CONCLUSION

Accordingly, it is hereby ORDERED:

(1)     Plaintiff's Motion to Proceed Under Pseudonym is GRANTED until the time of trial. Should this matter proceed to trial, Plaintiff must timely move for continued use of the pseudonym at that time.

(2)     Plaintiff's Motion for Protective Order is GRANTED IN PART and DENIED IN PART. The Parties SHALL file a proposed protective order consistent with this Order by Friday, October 11, 2024.

Dated this 2nd day of October 2024.

Tana Lin
United States District Judge