UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JANE DOE,

Plaintiff,

v.

SALESFORCE.COM INC., et al.,

Defendants.

CASE NO. C24-435-TL-BAT

**ORDER GRANTING IN-PART AND DENYING IN-PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DKTS. 119, 150)**

Plaintiff moves to compel discovery, **Dkt. 119**, and the parties have provided an LCR 37 joint submission updating their remaining disputes over the contested material, **Dkt. 150**. As discussed below, the Court **GRANTS in-part and DENIES in-part** plaintiff's motion to compel discovery. Dkts. 119, 150.

Plaintiff and the G6 Defendants (G6 Hospitality, L.L.C., G6 Hospitality IP, L.L.C., G6 Hospitality Property, L.L.C., G6 Hospitality Purchasing, L.L.C., G6 Hospitality Franchising, L.L.C., Motel 6, Inc., Operating, L.P.) dispute the scope of proportional discovery regarding three issues: (1) corporate knowledge of human trafficking; (2) activities that could be "red flags" of or are conceivably related to human trafficking; and (3) the relevant time period, i.e., the extent to which discovery should reach back and go beyond the alleged trafficking period of 2015 to 2021. The proper scope of discovery is "any nonprivileged matter that is relevant to any

ORDER GRANTING IN-PART AND DENYING IN-PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DKTS. 119, 150) - 1

party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The Court here considers relevance with respect to plaintiff's assertion that she was a victim of sex trafficking in violation the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). *See* Dkt. 1 [hereinafter "Complaint"] ¶ 8; *see* 18 U.S.C. § 1595(a). Under the facts of this case, to state a claim under perpetrator liability, plaintiff must show defendants' actual knowledge of trafficking; to state a claim under beneficiary liability, plaintiff must show defendants' actual or constructive knowledge of trafficking; and to state a claim under vicarious liability, plaintiff must show defendants' principal-agent relationship with those who are liable as perpetrators or beneficiaries such as the hotel staff or hotels. *See* 18 U.S.C. § 1595(a); *Ratha v. Patthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022); *Doe v. G6 Hospitality Property LLC*, 2025 WL 3537626, at *5 (W.D. Wash. Dec. 10, 2025); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020). While the party seeking discovery must first establish that its request is relevant, the party resisting discovery must show why discovery should not be allowed by clarifying, explaining, and supporting its objections. *Navarrete v. City of Kent*, 2024 WL 5315318, at *1 (W.D Wash. Dec. 31, 2024). The Federal Rules of Civil Procedure favor broad pretrial discovery, and this Court has broad discretion to control that discovery. *See Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011); *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).

ORDER GRANTING IN-PART AND
DENYING IN-PART PLAINTIFF'S MOTION
TO COMPEL DISCOVERY (DKTS. 119, 150)
- 2

**1. Corporate Knowledge of Sex Trafficking**

Plaintiff seeks to discover what the G6 Defendants knew "generally" about human trafficking, commercial sex, and prostitution, and asserts that the scope of relevant discovery should not be limited to what the G6 Defendants knew "specifically" at the subject Motel 6 locations where plaintiff was trafficked (Requests for Production Nos. 59–65, 68, 69, 130, 282–84, 300–02).[1] Dkt. 150, at 4. The Court finds that plaintiff has demonstrated that this information is relevant to whether the G6 Defendants knew or should have known that plaintiff was being trafficked and is proportional to the needs of the case.

As the parties are aware, particularly because the G6 Defendants have defended a number of these TVPRA cases nationwide, federal district courts have found that defendants' general knowledge of sex trafficking could reasonably bear on how defendants should have interpreted signs of a plaintiff's trafficking. *See, e.g.*, *Doe (E.M.B.) v. G6 Hospitality, LLC*, 2025 WL 2556104, at \*10–\*11 (E.D. Tex. Feb. 3, 2025) ("[T]he court is of the opinion that G6's general corporate knowledge of sex trafficking at its other Motel 6-branded properties is relevant to E.M.B.'s claims in this case. To find otherwise would severely undercut the 'purpose of discovery … to allow a broad search for facts.'") (citation omitted); *A.W. v. Red Roof Inns, Inc.*, 2025 WL 227160, at \*1 (S.D. Ohio Jan. 17, 2025) ("G6's general knowledge of sex trafficking could reasonably bear on how G6 should have interpreted signs of A.W.'s alleged trafficking. Moreover, this Court has repeatedly held that allegations of general knowledge and failure to act constitute constructive knowledge . . . ."); *A.F. v. G6 Hospitality*, 2024 WL 4564426, at \*1

---

[1] Plaintiff appears to have erroneously included Requests for Production Nos. 131–37, which involve only the three subject properties, in its argumentation about general corporate knowledge beyond the subject properties. *Compare* Dkt. 150, at 4 *with* Dkt. 150, Ex. A, at 3.

ORDER GRANTING IN-PART AND
DENYING IN-PART PLAINTIFF'S MOTION
TO COMPEL DISCOVERY (DKTS. 119, 150)
- 3

(D.N.M. Oct 24, 2024) ("While this Court agrees that generalized knowledge of sex trafficking at other properties is only lightly probative of the venture knowledge requirement, it can inform what measures might be reasonable to detect a sex trafficking venture."); *Doe (A.S.) v. Wyndham Hotel & Resorts, Inc.*, No. 4:23-CV-1969, Dkt. 57 (S.D. Tex. Oct. 8, 2024), at 1–2 (granting plaintiff's motion to compel discovery regarding Wyndham's corporate knowledge of sex trafficking with respect to Wyndham owned or franchised properties); *S.C. v. Wyndham Hotels and Resorts, Inc.*, 2024 WL 277117, at *1 (N.D. Ohio Jan. 25, 2024) ("Although general knowledge about sex trafficking's prevalence is not enough on its own to show that the Red Roof Defendants should have known about S.C.'s trafficking, this does not mean evidence about such general knowledge could not potentially lead to admissible evidence.") (footnote omitted). The observation of the Eastern District of Texas is applicable here: "G6 does not cite a single case refuting the idea that general knowledge of sex trafficking *in combination with* venture-specific facts may show a hotel-defendant's constructive knowledge." *Doe (E.M.B.)*, 2025 WL 2556104, at *10. Plaintiff has demonstrated the relevance of G6 Defendants' corporate knowledge of sex trafficking in general rather than only with respect to the three Motel 6 properties at which plaintiff alleges she was trafficked.

The next inquiry is whether G6 Defendants' corporate knowledge of sex trafficking is proportional to the needs of this case. Plaintiff contends that discovery should encompass its corporate knowledge of trafficking beyond the three Motel 6 locations where plaintiff was allegedly trafficked. This expansive view is supported by the Eastern District of Texas in *Doe (E.M.B.)* and the Southern District of Texas in *Doe (A.S.)*. *Doe (E.M.B.)*, 2025 WL 2556104, at *9–*11; *Doe (A.S.)*, No. 4:23-CV-1969, Dkt. 57, at 1–2. The G6 Defendants oppose such a broad geographic range, arguing that such discovery would be disproportional in light of the limited

relevance of the information sought and the burden and expense of accessing hundreds of thousands of documents across 1,500-plus properties in order to address a lawsuit involving a single plaintiff. This narrower view is supported by the District of New Mexico in *A.F.*, where the "lightly probative" evidence of general corporate knowledge meant that discovery was limited according to the class of information about sex trafficking requested: complaints, reviews, surveys, customer data and the like, and police/news/internal reports were limited to the subject property; email and communications were limited to those between the subject property and those overseeing the subject property; and assessments/studies, trainings, policies, procedures, guidance, and other corporate information were limited to company-owned Motel 6 properties. *A.F.*, 2024 WL 4564426, at *2.

The Court finds that the following limitations on the contested information regarding corporate knowledge of trafficking to be proportional to the needs of this case to the extent they do not conflict with the parties' preexisting agreements:

- "Documents provided by any G6 entity marketing department to any security departments and/or security employees" and "online reviews" from 2010 to present (Nos. 59–64). *Permitted beyond the subject properties, limited to subject matter involving human trafficking, commercial sex, solicitation, and prostitution. The temporal scope is addressed more specifically below.*

- "Company personnel and hierarchy charts, diagrams, spreadsheets" (No. 65, 68, 69). *Permitted beyond the subject properties to the extent the persons or entities are involved in the supervision, management, policies, standards, or rules of the subject properties or are applicable to all properties owned or franchised by the G6 Defendants. The temporal scope is addressed more specifically below.*

ORDER GRANTING IN-PART AND
DENYING IN-PART PLAINTIFF'S MOTION
TO COMPEL DISCOVERY (DKTS. 119, 150)
- 5

- Training regarding human trafficking that YOU, including your directors, owners, officers, and employees, underwent from 2010 to 2021" (No. 130); "Public statements regarding human trafficking" from 2010 to present (No. 282); "Company statements regarding human trafficking" from 2010 to present" (No. 283); "Training programs YOU have participated in, attended, and/or presented related to human trafficking from 2010 to present" (No. 284); "Human trafficking data" from 2010 to present" (No. 300); "COMMUNICATIONS between any G6 Defendants in this case, including but not limited to YOU, and any hospitality association and/or organization related to prostitution, commercial sex, solicitation, sex trafficking, and/or human trafficking" (No. 301); "Communications related to human trafficking from 2006 to present" (No. 302). *Permitted beyond the subject properties. The temporal scope is addressed more specifically below.*

In contrast to the District of New Mexico in *A.F.*, the Court is not persuaded that the discovery sought would impose a significant burden and expense on the G6 Defendants. The G6 Defendants contend that such requests for corporate knowledge would apply to over 1,500 Motel 6-branded properties across the nation." Dkt. 124, at ¶ 3 (Wallace Decl.); *see* Dkt. 150, at 16. The scope of discovery of the G6 Defendants' corporate knowledge is not this broad. As plaintiff has noted, the requested information need not be secured from each of the 1,500-plus Motel 6-branded hotels nationwide. The requests involve the information within the possession and control of the six entities that comprise the G6 Defendants. *See, e.g.*, *Doe (E.M.B.)*, 2025 WL 2556104, at *14 ("Ultimately, the court is not convinced that G6's production of material regarding its general corporate knowledge of sex trafficking of its other Motel 6-branded properties from January 1, 2010 to January 1, 2018 is unduly burdensome.").

ORDER GRANTING IN-PART AND
DENYING IN-PART PLAINTIFF'S MOTION
TO COMPEL DISCOVERY (DKTS. 119, 150)
- 6

**2.  "Red Flag" Activities Conceivably Related to Trafficking**

Plaintiff seeks to discover documents relevant to what the G6 Defendants knew about indicators that trafficking was occurring at the three subject Motel 6 locations, including "red flags" of trafficking, commercial sex, and prostitution, as well as of related activities, including trafficking, prostitution, commercial sex, domestic violence, sexual assault, rape, and drug activity (Requests for Production Nos. 16, 18, 25, 27–32, 34–37, 40, 44–46, 75–80, 83, 99–101, 131–37,[2] 172–74, 272–80, and 295). Dkt. 150, at 4. The Court finds that "red flags" of sex trafficking at the three subject Motel 6 locations is relevant, though when the inquiries move into issues beyond trafficking, commercial sex, and prostitution, such broader inquiries should be limited to the trafficking period (2015–2021).[3]

In the Complaint, plaintiff refers to hotel employees witnessing "red flags" of sex trafficking: men controlling women; commercial sex; drug use and fights surrounding the commercial sex; soliciting commercial sex throughout the hotel and parking lot; women not allowed to come and go freely without escort; numerous different men entering the same hotel room women were escorted to by other men and coming in and out without staying overnight or showing ID; paying for rooms in cash per night without any or without proper ID; women being escorted to rooms rented by men while looking unhealthy, unhappy and/or injured; existence of condoms, sex paraphernalia, and lingerie; and women and men coming with no luggage. Complaint, at ¶¶ 16, 170. Thus, the defendants' repeated exposure to such "red flags" of sex

---

[2] Although plaintiff does not list Nos. 131–37 as disputed in this category, *see* Dkt. 150, at 4, her own exhibit lists Nos. 131–37 as disputed "Discovery Related to the Red Flags of Sex Trafficking and Related Activity," Dkt. 150, Ex. A, at 3. *See infra* note 1.

[3] The Court accepts that the *only* "red flag" activities subject to discovery consist of plaintiff's proposal to limit "related activities" to knowledge of trafficking, prostitution, commercial sex, domestic violence, sexual assault, rape, and drug activity. Dkt. 150, at 18–19.

ORDER GRANTING IN-PART AND
DENYING IN-PART PLAINTIFF'S MOTION
TO COMPEL DISCOVERY (DKTS. 119, 150)
- 7

trafficking is relevant to plaintiff's contention that the G6 Defendants knew or should have known about plaintiff's being trafficked at the subject properties. *See, e.g.*, *Doe (E.M.B.)*, 2025 WL 2556104, at *10.

In terms of proportionality, the Court is cognizant of the G6 Defendants' concern that permitting discovery of criminal activity conceivably ancillary to sex trafficking—such as domestic violence or drug use—would be of only limited, probative value to what needs to be proven at trial, *viz*, that defendants had actual or constructive knowledge that plaintiff was being sex trafficked at the subject properties between 2015 and 2021. Requiring the G6 Defendants to produce evidence of all criminal activity that might be tangentially related to sex trafficking is, as the parties acknowledge, too wide of a net to cast when not related to the trafficking period. *Cf. S.C.*, 2024 WL 277177, at *1 (finding that the search for email correspondence should encompass sex trafficking without necessarily being so broad as to take in all commercial sex). The Court finds that prior to the trafficking period and after it, the G6 Defendants need only produce evidence of activity involving human trafficking, commercial sex, and prostitution. This will allow non-trafficking period "red flag" activities to be discovered only when captured along with references to human trafficking, commercial sex, and prostitution in order to demonstrate the defendants' constructive knowledge. Within the trafficking period, however, plaintiff is entitled to seek information about related "red flags" such as domestic violence, sexual assault, rape, and drug activity because such an inquiry may reveal information related directly to defendants' knowledge of plaintiff's trafficking at the three subject properties. *Cf. Doe A v. SeaTac Hotels LLC*, 2025 WL 474233, at *3 (denying defendants' motion to dismiss in part because of "the many red flags apparent to hotel employees that Plaintiff was being trafficked for commercial sex, and which was or should have been reported to Choice").

ORDER GRANTING IN-PART AND
DENYING IN-PART PLAINTIFF'S MOTION
TO COMPEL DISCOVERY (DKTS. 119, 150)
- 8

### 3. Relevant Time Period

Plaintiff asks that the G6 Defendants' search obligations regarding the relevant time period to be: (a) 2015 (start of trafficking) to 2023 (two years after the end of trafficking) for issues involving the feasibility to taking steps to mitigate human trafficking (Requests for Production Nos. 75–77, 84–86, 93–95, 99–101, 110–12, 121–26, 131–34, 154–56, 161–64, 175, 272–80); (b) 2010 (five years prior to the start of trafficking) to 2023 (two years after the end of trafficking) for issues involving the G6 Defendants' control over their hotels generally (Requests for Production Nos. 135–45, 171, 172, 306–08); and (c) 2010 (five years prior to the start of trafficking) to 2021 (end of trafficking) for all other requests for production. Dkt. 150, at 4.

The Court modifies the timeframes as follows: **(a) 2015 (start of trafficking) to 2021 (end of trafficking)** for issues involving "red flag" activities ancillary to human trafficking, commercial sex, or prostitution, such as domestic violence, sexual assault, rape, and drug activity; **(b) 2015 (start of trafficking) to 2023 (two years after the end of trafficking)** for issues involving the feasibility to taking steps to mitigate human trafficking; (c) **2012 (three years prior to the start of trafficking) to 2023 (two years after the end of trafficking)** for issues involving the G6 Defendants' control over their hotels generally; and (c) **2012 (three years prior to the start of trafficking) to 2021 (end of trafficking)** for all other requests for production.

The Court finds that these time periods—ranging from no earlier than three years before the trafficking period to two years after the trafficking period—are relevant and proportional to this case involving the G6 Defendants' actual and constructive knowledge of a trafficking venture, as well as its control over other liable parties, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information,

ORDER GRANTING IN-PART AND
DENYING IN-PART PLAINTIFF'S MOTION
TO COMPEL DISCOVERY (DKTS. 119, 150)
- 9

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See, e.g.*, *Doe (E.M.B.)*, 2025 WL 2556104, at *11–*12 (finding that "four years before and four years after the Alleged Trafficking Period is called for in this case"); *A.W.*, 2025 WL 227160, at *2 (finding "G6's search obligations are to provide production from 2008, which is when the TVPRA authorized civil liability and only (2) years before A.W.'s trafficking began, [to] present, which is four (4) years after the end of Plaintiff's trafficking period"); *A.F.*, 2024 WL 4564426, at *3 (permitting discovery to reach back three years before the incidents in the lawsuit).

### 4.  Expenses for Bringing Motion to Compel

Because the motion is granted in-part and denied in-part, the Court may, after providing an opportunity to be heard, apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). Plaintiff has not requested the expenses for bringing this motion. Nonetheless, the Court will consider whether to grant attorney's fees and costs for bringing the motion to compel upon plaintiff's proper motion.

The parties stipulated to an extension of time to April 10, 2026, for the G6 Defendants to submit invoices related to an earlier award of expenses so the parties could first participate in mediation. Dkt. 155. Should plaintiff move for the expenses of bringing the current motion to compel, she is directed to file the motion by April 10, 2026.

DATED this 12th day of February, 2026.

_____

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING IN-PART AND
DENYING IN-PART PLAINTIFF'S MOTION
TO COMPEL DISCOVERY (DKTS. 119, 150)
- 10